Kreemax, J.,
delivered the opinion of the court:
The original hill in this case was filed February 2, 1870, by W. C. Kyle., as a creditor of the estate of Robert P. Kyle, deceased, and is simply a proceeding to subject the lands of the estate to the payment of the debt of complainant, under the act of 1827. Code, sec. 2267 [Shannon’s Code, sec. 4000]. That section is: “Where an executor, not authorized by will to sell and convey real estate, or an administrator, has exhausted the personal estate of the deceased in the payment of his debts, leaving just debts or demands against him unpaid, or paid by the representative out of his own means, and the deceased died seized [and possessed] of real estate, the chancery or circuit court [of the district .or county], where the same or any portion of it lies, may, on the petition of the representative, or any bona fide creditor whose debt remains unpaid, decree tho sale of such lands, or of such portions thereof as may prove least injurious to the heirs and legal representatives, and as may be sufficient to satisfy the debts or demands set forth in the bill or petition, and shown to exist.” By the next section it is provided that before decreeing such sale, it must be shown that the personal estate has been exhausted in the payment of bona fide debts, and that the debts or demands for.which the sale is sought are justly due and owing either to creditors or the personal representative, for advances out of his own means properly made. By sec. 2269 [Shannon’s Code, sec. 4002], “such suits prosecuted under the, last two sections shall be conducted as other suits in equity,” that is, as other suits of like kind, or suits to subject assets of an estate, are con *382 ducted by the established practice of said court. This provision, together with the construction given them by the courts, commencing with the leading case of Dulles v. Read, 6 Yer., 53, decided in 1834, presents a simple and efficient mode of proceeding to attain the end designated, to wit, the appropriation of the real estate descended to the heir to the satisfaction of debts due, after the personal estate, the primary fund for this purpose,- had been exhausted. [For the reason and policy of the statute, see note 1 under sec. 4003 of the Code.] It would certainly be an improvement on the system, however, if the whole estate could at once be- brought under the control of a competent court, the creditors all brought speedily before it, an account had of the assets, both real and personal, the latter collected under the direction of the court, and a sale of the realty ordered as soon as the necessity for it is shown, without the delay incident to the exhaustion of the personalty in actual payment of the debts by the administrator. These assets usually consist mainly of notes given for personal property sold by the administrator, which can only be collected after considerable lapse of time, frequently as long as the two years and six months, the period fixed by our law in which suit may be brought against him. This state of things gives rise to much complication, and presents frequently much of difficulty, with vexation and expensive litigation, that might be avoided under a different system. [See note 6 under sec. 4003 of the Code, showing the law to be as stated here it should be.]
But passing from this, we must take the law as we find it, and administer the rights of parties as fixed by it. This is a direct proceeding by appeal from the decree of the chancellor ordering a sale of the land of the heir of Robert Kyle, deceased, and the only question before us is, whether, under the pleadings and facts shown in the record, this decree was a proper one.
*383 Tlie language of tlie Code, which we have cited, as well as the known, purpose of the. Act of 1827, as given in the case cited, shows clearly that the object of the proceeding was to settle up and complete the administration of the estate, when a sale of tlie realty became necessary in one suit. To use the lauguage of Judge Green, 6 Yer., p. 66, the act of 1827 intended that the' chancellor having am account of all the debts before him, and an exact knowledge of the character, description, and. probable value of the estate, should take the lands into the custody of the court, and direct its sale for the benefit of all, under such circumstances as would insure the best price. After adverting to the evils intended to be remedied, one of which was the accumulation of costs by separate suits on the part of creditors, he says: “If this view be just, would not the legislature have been guilty of great folly if it. had been intended by this act that more than one bill should be filed by the administrator,” and then adds, that the creditor may file his bill where the administrator fails to do so, for the attainment of the indentical same ends which would have been attained had the administrator filed the bill.
Properly, the debts remaining due, especially when the bill is filed by the administrator, should all be set out in the bill, and, as far as they are known, the same should be done when the bill is filed by a creditor. Tbe court may, and in a proper case ought, to enjoin creditors from bringing suit against the estate, as was held in the above case. The creditor who files the bill, as a matter of course, must specify his own debts, and can only ask a sale for the debts there set out in Ms hill. If a debt should he omitted by oversight or mistake at the time, or should afterwards accrue to the party, these should he added by amendment or supplemental bill. When the order is made for an accoun L of debts, notice should be given to all creditors to come in and file their claims, which, regularly, ought to be by a petition, stating tlie nature and character of the claim. In cases of small sums, such creditor might probably appear *384 before tbe master and lile bis claim, witli its evidence in eacb case, by affidavit, and if contested by tbe administrator or any creditor, make proof of tbe same, so as to meet tb© objection made to its allowance. Tbis is certainly tbe proper practice in like cases in a court of equity, after tbe manner of which tbe case is required to be conducted.
’Without going'further_into a statement of these general principles, we but proceed to apply such of them as are proper to this case.
Tbe only debt mentioned or claimed as due complainant in his bill, is tbe judgment obtained against White, administrator of Robert Kyle, June, 1868, for $2,399.67. In. fact, as far as we can see, it is probable be is tbe only creditor who has ever actively participated in this proceeding. A few other claims appear in tbe record; by whom, and when or bow presented does not clearly appear. So far as all these claims on tbe part of others are concerned, which have been disallowed, they are not before us> as no creditor has appealed except complainant. So far as any may have been allowed over tbe exception of defendant, they may be considered on tbe appeal of defendant. The claim of complainant is stated substantially, as follows, in tbe bill: “That, as one of the creditors of tbe estate, be recovered a judgment in tbe circuit court of Hawkins county, in June, 1868, for $1,399.67, with costs. While the general statement is made that the estate had been involved in disastrous btigation, and the personalty exhausted, leaving considerable just indebtedness unsatisfied,” yet the above debt is tbe only one specifically mentioned as due and unpaid.
We proceed to an examination of this claim, as it stands in tbe record, that we may see whether it is shown to be a bona fide debt, or, in tbe language of the statute, “justly due and owing,” so as to be tbe basis for a decree to sell tbe land sought to be sold in tbis case. Tbe first question is, wbat is tbe force and. effect of a judgment against tbe administrator? Under the act of 1784, carried into tbe *385 Code, sec. 2258 [Shannon’s Code, sec. 3991], and subsequent sections, it is settled by a series of decisions unbroken, that the judgment against the administrator was not conclusive lien on a proceeding by scire facias to subject lands descended to the payment of debts of the ancestor, notwithstanding the plea of “fully administered,” or no assets, had been found in his favor, as provided for in sec. 2 of the act. Code, 2259-2262 [Shannon’s Code, secs. 3992— 3995]; 1 Yer., 287, 288, and authorities cited. See, also, notes to T. & S. Code, and cases cited, sec. 2258. The heirs had the right to contest the original demand with the creditor of the ancestor to the full extent the adminstrator had when first sued. 1 Yer., 288; 2 Swan, 168. The plea of' fully adniinstered found in favor of the administrator, is only prima facie evidence of the right to the remedy given by scire facias, under the act of 1784. 1 Yer., 289. And if the administrator have, a finding against him, or he permit it, or when tire plea fully administered, or no assets is found against him, when really he had no assets, and after-wards proves insolvent, there is no legal liability on the part of the heirs and their lands that could be reached either in law or equity. 1 Yer., 289; Peck v. Wheaton’s heirs, Martin & Yer., 354-360.
The remedy is against the administrator and his sureties, or against him personally. Martin & Yer., Ibid.
This being settled, the question is, does the act of 1827 in any way alter tírese principles? Ko such purpose, is found in the act; on the contrary, its language is clearly in accord with the previous policy of the law, to exempt the realty from sale as long as personalty remained, which might, by any means, be appropriated to payment of debts. The personalty must be. shown to have been exhausted in doing this before the sale can take place by the words of the statute. That this policy was intended to be preserved, in the construction given to the act, in the case of Dulles v. Read, 6 Yer., 68, and of the correctness of this view, *386 we can have no doubt. Tbis being so, the judgment against the administrator can be, at most, but prima facie evidence of the debt against the estate, which the heir is entitled to contest, and show to be incorrect, in this new- and independent proceeding to subject his land to the payment of the debt of his ancestor, for the satisfaction of which the personalty is the primary fund by our law, as it was at common law.
This being assumed, how does this case stand on the facts? The proof is clear and definite that this judgment was confessed by the administrator, not because he admitted and was satisfied of the correctness of the claim of the plaintiff, but upon an agreement that the land should be sold (as they thought they might do) and bought in by plaintiff, who was then to hold it for the daughter of Hubert Kyle, she being his niece. This agreement the: administrator swears was reduced to writing and placed in the hands of A. A. Kyle, we believe^ for safe keeping. It is not produced it is true, but Kyle is examined as a witness in this case, and no effort is made to disprove this allegation. The plaintiff himself makes no statement in denial of this fact, although Ms deposition is taken in the case. Under these circumstances, we are compelled to take the facts to be as stated by White. It is further shown by White, the administrator, that in comparing the respective claims of himself, as administrator, against complainant, and complainant’s claim against the estate, there was found to be only a few dollars, perhaps about fifteen, and this on the assumption that all claims then shown were to be allowed as just, which the administrator swears he could not and did not admit. In the face of all this, probably from a mistaken feeling that he ought to save the land for the infant daughter of the intestate, he consented to allow the judgment to go against him, with an agreement, however, that all proper credits were ultimately to be allowed. We need but say that the judgment thus obtained cannot be allowed to stand for anything against the heir, who was *387 no party to it. It must go- for 'nothing in this investigation. "While a judgment bona fide obtained against the administrator might be prima facie evidence of the indebtedness of the estate, a judgment like this, confessed contrary to the truth of the case as understood by the administrator at the time, can only aft'eot him, but can have no weight whatever against the heir, who was not a party to it. "We need not go into other questions presented in argument. If it be true, as seems to be held by a uniform current of decisions since the case of Gilman v. Tisdale’s heirs, 1 Yer., 288, 289, that unless the plea of fully administered, or no assets is found in favor of the adminstrator, the creditor has no right to go against the land in the hands of tire heir, either in law or equity, and the act of 1827 does not change the lights of the parties or policy of the laiw, but only gives a different inode of proceeding, complainant must fail in any view of his case. See, also, 2 Yer., 65; Peck v. Wheaton’s heirs, Martin & Yer. (Coop. Ed.), 358-360.
W e need not discuss this case in any other jaspec-t of it, nor authoritatively settle the question suggested in this case, as to effect of failure of adminstrator to plead no assets, or fully administered, this being the only claim before us in such form as to be considered. If failing for the reason given, the bill should have been dismissed. It is proper to say, in the language of the court, in Peck v. Wheaton’s heirs, Martin & Yer., 358, that the creditor has ample remedy for his debt, on the bond of the administrator, as well as a personal remedy against him and 'his estate, on suggestion of devastavit, based on the judgment against him.
The decree of the chancellor will be reversed, and the biU dismissed, with costs of this and the court below. Nothing is adjudged on the alternative prayer of the cross-bill for an account against White, administrator. The decree in this case not to prejudice such right in any other proceeding for said purpose.